IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD PICKMAN, | No. C 08-2762 CW |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff Leonard Pickman, proceeding pro se, moves for summary judgment or remand, pursuant to 42 U.S.C. § 405(g), of a final decision of Michael J. Astrue, the Social Security Commissioner, denying his request for waiver of recovery of overpayment of $6,280.80 for the period from November, 1998 to August, 1999. Section 405(g) authorizes this Court to enter, upon

the pleadings and transcript of the record, a judgment affirming, reversing or modifying the decision of the Commissioner, with or without remanding the cause for a rehearing.  Defendant has cross-moved for summary judgment.  For the reasons stated below, Plaintiff's motion for remand is GRANTED, and the cross-motions for summary judgment are DENIED.

## BACKGROUND

In the spring, 1995, Plaintiff became the caretaker of his mother, Ms. Dora Pickman, who suffered from Alzheimer's disease, dementia and other ailments.  (Pl.'s Decl. at 1.)  Because of her impairments, Ms. Pickman was qualified to receive Supplemental Security Income (SSI).  (Id.)  As her representative payee, Plaintiff was authorized to receive the SSI payments on Ms. Pickman's behalf.  (Id.)  In October, 1998, due to her declining health, Ms. Pickman moved from Plaintiff's house to the Jewish Home for the Aged (the Home).  (Id.)  On August 11, 1999, the SSA sent a letter to Ms. Pickman at the Home notifying her of a change in payment.  (Pl.'s Ex. D.)  The letter indicated the payments to Plaintiff on Ms. Pickman's behalf would be changed from November 1, 1998 and continuing.  It stated that the SSA would begin actually reducing the payments in September, 1999.  This letter demonstrates the SSA knew that Ms. Pickman had moved to the Home in October, 1998, although it did not process the information until ten months later.  The letter does not state when or how the SSA became aware that Ms. Pickman had moved, nor does it state when it began payments to the Home.  The letter does not inform Ms. Pickman that it would collect any overpayment to Plaintiff on Ms. Pickman's behalf.  Ms. Pickman died on April 28, 2004. (Pl.'s

2

Decl. at 2.)

In July, 2004, after Ms. Pickman's death, Plaintiff received a notice from the Social Security Administration (SSA) stating that Ms. Pickman had been paid too much SSI money and that he would have to repay it unless he "used the SSI check(s) for the recipient's needs, [and it] was not [his] fault that the recipient was overpaid." (Administrative Transcript (Tr.) at 43). The SSA stated it would hold Plaintiff liable to recover the overpayment as Ms. Pickman's representative payee. (Id.) In October, 2005, a further notice stated that the SSA had overpaid Ms. Pickman by $6,427.80 in SSI benefits between November, 1998 and July, 2004. (Tr. at 46-47.) The overpayments occurred during the ten months after Ms. Pickman first moved to the Home, and during the three months after she died.[1] (Pl.'s Decl. at 2.)

On July 6, 2004, Plaintiff filed a request for waiver of repayment. (Tr. at 60.) In his request, Plaintiff stated that he was entitled to a waiver because he "used the money for the recipient's needs" and that it was not his fault the recipient was overpaid. (Tr. At 60.) On May 17, 2005 and October 5, 2005, the SSA denied Plaintiff's request for a waiver. (Tr. at 10, 56, 58.)

Plaintiff requested a reconsideration of the denial, and on October 11, 2005, the SSA upheld the initial determination, reasoning that Plaintiff "knew or should have known that the payments made for that period of time [were] not due [to him]," and therefore he should have returned the payments to the SSA.

---

[1] Plaintiff does not contest that the $147.00 overpayment of benefits that was received after Ms. Pickman's death should be repaid. (Pl.'s Mot. at 5-6.) At issue here is the $6,280.80 overpayment made while she was at the Home.

3

1  (Tr. at 53.)  Plaintiff was informed that he could request a
2  hearing with an Administrative Law Judge (ALJ) if he disagreed
3  with the SSA's decision.
4      On July 24, 2007, Plaintiff's hearing took place in front of
5  an ALJ.  Plaintiff testified that he mailed a letter to the SSA in
6  October, 1998 informing it that Ms. Pickman had moved to the Home.
7  (Tr. at 71.)  He submitted a copy of that letter in support of
8  this motion; the letter is addressed to "Social Security
9  administration," and states: "The purpose of this letter is to
10 notify you that effective 10/22/98 Dora Pickman [sic] residence is
11 changing.  She is moving to the nursing facility . . . ."  (Pl.
12 Ex. A).  Plaintiff also testified that the Home had been receiving
13 checks from the SSA at the time of Ms. Pickman's death.  (Tr. at
14 74.)  At the time of Ms. Pickman's death, the payment to Plaintiff
15 on Ms. Pickman's behalf had been reduced to $47 per month because
16 the Home was also receiving payments.  The ALJ found it "unlikely"
17 that Plaintiff timely notified the SSA of his mother's change of
18 address because "the change was not processed for several months
19 after her death."  (Tr. at 13.)  The ALJ stated: "Mr. Pickman has
20 shown that he knew that expenses would be lower when his mother is
21 in a nursing home through a worksheet that he submitted with his
22 request for waiver."  (Id.)  The worksheet shows that Ms.
23 Pickman's living expenses went from $1570 per month while living
24 with Plaintiff to $890 per month while living in the nursing home.
25 (Pl.'s Ex. B.)  The ALJ concluded that, regardless of whether
26 Plaintiff notified the SSA of Ms. Pickman's change of address, he
27 was at fault because he did not return the payment which he knew
28 or could have been expected to know was incorrect.  (Id.)  Based

4

on the above reasoning, the ALJ denied waiver of the overpayment. (Tr. at 14.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which, on April 2, 2008, denied his request for review. (Tr. at 2.) The Appeals Council stated:

> We agree . . . it is unlikely that you notified the Social Security Administration of your mother's move to the nursing home in a timely manner. There is no evidence to substantiate your allegations. Your assertion that the change of address which was made by the Administration verifies that you made such a report is not convincing as the change of address was not made by the Administration until August 1999, although the move occurred in October 1998. Furthermore, your allegations in this regard have been inconsistent as you have indicated both that you reported the change and that you relied on the nursing home's assurances that they would report the move.
>
> . . .
>
> As your mother's representative payee . . . you agreed to assume all responsibilities in connection with the receipt of supplemental security income (SSI) checks which would otherwise fall to the recipient. You, therefore, had an affirmative duty to inform yourself of the conditions under which you received payment for your mother and to return any payment not due. If you had done so, you would have known that your mother was due only a small SSI payment upon moving to the nursing home. Accordingly, you either knew or could have been expected to know that you were accepting incorrect SSI payments.

(Tr. at 3.)

LEGAL STANDARD

A court should affirm final decisions of the Commissioner if supported by substantial evidence and based on the application of correct legal standards. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

5

reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. "To determine whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." Id. Where the evidence is "susceptible to more than one interpretation," the court must uphold the Commissioner's decision. Id. at 1039-40. However, the failure to make adequate findings would at least necessitate a remand for a redetermination of fault. Lewin v. Schweiker, 654 F.2d 631, 637 (9th Cir. 1981). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Id.

The SSA must waive the repayment of benefit overpayments if the individual sustains the burden that he was (1) without fault in causing the overpayments, and (2) adjustment or recovery of the overpayments would either (a) defeat the purpose of Title II of the Social Security Act or (b) be against equity and good conscience. 42 U.S.C. § 404(b); see Lewin, 654 F.2d at 632 n.1. In the context of benefit overpayments, fault may arise in one or more of the following three ways: (a) from an incorrect statement made by the recipient that he "knew or should have known to be incorrect," (b) from failure to furnish information that he "knew or should have known to be material," or (c) from acceptance of a payment that he "either knew or could have been expected to know was incorrect." Anderson v. Sullivan, 914 F.2d 1121, 1122 (9th Cir. 1990) (quoting 20 C.F.R. § 404.507.) In determining whether the facts show that an incorrect payment resulted from one of

6

these three types of fault, the SSA is to consider "all pertinent circumstances," including the individual's age, intelligence, and physical, mental, educational or linguistic limitations. Id. at 1123; 20 C.F.R. § 404.507. This determination is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the claimant and the peculiar circumstances of his situation." Elliot v. Weinberger, 564 F.2d 1219, 1233 (9th Cir. 1977), aff'd in part and rev'd in part sub nom. Califano v. Yamasaki, 442 U.S. 682 (1979).

The waiver analysis thus involves a two-step inquiry. First, the SSA must determine whether the claimant was without fault in receiving or retaining the overpayment. 42 U.S.C. § 404(b); Elliot, 564 F.2d at 1233. If the claimant was not without fault, falling within one or more of the three enumerated categories in 20 C.F.R. § 404.507, stated above, then the inquiry ends, there being no need to proceed with the second step of the analysis. If, on the other hand, the claimant shows that he or she was without fault, the SSA must proceed to the second step and consider whether recovery of overpayments would either defeat the purpose of the Social Security Act or be against equity and good conscience. Id.

Where the claimant's credibility is a critical factor in the Commissioner's decision, an implicit finding is insufficient; a court must remand if there is no explicit finding as to credibility. Albalos v. Sullivan, 907 F.2d 871, 873 (9th Cir. 1990). "(A)n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a

7

statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. . . . It is incumbent upon the examiner to make specific findings." Lewin, 654 F.2d at 635. Although an ALJ may choose to disbelieve a claimant's testimony, such testimony must be considered seriously, and rejection of the testimony must be accompanied by a specific finding to that effect, supported by a "specific, cogent reason for the disbelief." Id.

## DISCUSSION

Plaintiff contends that he was without fault in receiving and failing to return the overpayment because he notified the SSA of Ms. Pickman's change in address immediately after she moved to the Home, and did not know or have reason to know the subsequent payments were incorrect. (Pl.'s Mot. at 3-5.) He also contends his statements regarding informing the SSA of Ms. Pickman's move to the home have not been inconsistent. Plaintiff testified before the ALJ:

> I signed over the required documents with the nursing home business office. And they told me they will immediately notify SSA about the change in the living arrangement. On top of that, I knew my obligation to notify – as I mentioned before – to notify SSA about any changes in [Ms. Pickman's status], stating that my mom's living arrangements are changing.

(Tr. at 71.) Plaintiff's statement indicates that he believed the nursing home would notify the SSA of Ms. Pickman's move and also notified the SSA on his own because it was his responsibility to do so. These statements and actions are not inconsistent.

Additionally, Plaintiff contends he did not know or have reason to know that the SSA was making incorrect payments because

8

he didn't monitor deposits into his mother's account, and, because her expenditures often exceeded the money in the account, he believed that all of the money deposited into the account belonged to her. (Pl.'s Mot. at 5.) He states:

> I paid for my mother's expenses from her bank account, on which I was an authorized user. Since I had already notified SSA about Ms. Pickman's move to the Jewish Home, and the Jewish Home was evidently receiving payments from the state, I believed that any money in my mother's account belonged to her. I spent all of that money to care for her and did not monitor the deposits into her account.

(Pl.'s Decl. at 2.)

The Commissioner's decision that Plaintiff was not without fault was based on the findings that it was "unlikely" he furnished information about Ms. Pickman's change of address, which caused the overpayment, and that he knew or should have known that the payments were incorrect. (Tr. at 13, 3.) The ALJ presumably did not continue to the second step of the waiver inquiry because it found that Plaintiff was at fault and, therefore, could not qualify for a waiver. If the Commissioner failed to make adequate findings to determine Plaintiff's fault, this Court must remand for a redetermination which considers all of the pertinent circumstances and states explicit findings. See Lewin, 654 F.2d at 635.

The ALJ failed to make any factual finding as to whether Plaintiff sent a letter to the SSA notifying it of Ms. Pickman's move, and instead merely stated that it "appears unlikely." (Tr. at 13.) Apparently, the ALJ's conclusion is based on the fact that the SSA did not process Ms. Pickman's change of address and reduce the payments to Plaintiff on her behalf until August, 1999,

9

ten months after her move to the Home. However, the ALJ did not determine when or how the SSA found out about Ms. Pickman's move, nor did he rule out that the delay was the fault of the SSA. The letter sent by the SSA to Ms. Pickman in August, 1999, states that Ms. Pickman's payments would be changed from November, 1998 and continuing. The fact that the SSA did not reduce the payments to Plaintiff on Ms. Pickman's behalf until August, 1999 appears to be its own error, not the result of any failure on Plaintiff's part. The fact that the SSA did not realize it had overpaid Ms. Pickman until 2004, years after the overpayments had occurred and after Ms. Pickman's death, indicates the plausibility of a delay in the SSA's processing. (See Tr. at 43.) Although the record does not indicate when the SSA began making payments to the Home, it is most likely that it began making payments to the Home as soon as Ms. Pickman moved there, as a result of the Home's notification, or Plaintiff's notification, or both.

    The ALJ's decision could be interpreted as making an implicit finding that Plaintiff's assertion that he sent proper notice to the SSA was not credible. An indication that the SSA's decision was based upon credibility is found in the Appeals Council's statement that "your allegations in this regard have been inconsistent as you have indicated both that you reported the change and that you relied on the nursing home's assurances that they would report the move." (Tr. at 3.) However, as noted above, Plaintiff's statements are not inconsistent. Additionally, the ALJ did not expressly discredit Plaintiff's testimony nor articulate any reasons for questioning his credibility aside from the fact of the delay in the reduction of payments itself, which

10

is not dispositive.  Also, the ALJ failed to indicate the amount of weight given to various items of evidence, including the letter offered by Plaintiff as proof that he notified the SSA of Ms. Pickman's change in address.  Explicit findings regarding a plaintiff's credibility are critical.  See Albalos, 907 F.2d at 873 ("[W]e must reverse because no explicit finding as to Albalos' credibility was made. . . . Albalos' credibility was critical to the 'without fault' determination."); Lewin, 654 F.2d at 635 ("[R]ejection of . . . testimony must be accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief.")  Because the ALJ failed to make findings regarding whether Plaintiff notified the SSA and Plaintiff's credibility, the Court must remand.

Furthermore, the ALJ's finding that, regardless of whether Plaintiff notified the SSA of his mother's move, Plaintiff "knew or should have known" that the payments were incorrect fails to consider all pertinent circumstances.  The ALJ did not make a finding as to whether or not Plaintiff had a good faith belief that Ms. Pickman was entitled to the SSI payments she received. However, 20 C.F.R. § 404.510 states:

> An individual will be considered to be 'without fault' in accepting a payment which is incorrect . . . if it is shown that such failure to report or acceptance of the overpayment was due to one of the following circumstances: . . . (g) The continued issuance of benefit checks to him after he sent notice to the Administration of the event which caused or should have caused the deductions provided that such continued issuance of checks led him to believe in good faith that he was entitled to checks subsequently received.

The mere fact that Plaintiff knew that Ms. Pickman's living expenses were lower at the nursing home does not necessarily mean

11

that he knew or should have known that the SSI payments would be lower.  Courts have noted that the Act is complicated and difficult even for the knowledgeable to comprehend.  See Lewin, 654 F.2d at 634 (without proof to the contrary, there was no basis for concluding that claimant understood instructions because the "Act is an exceedingly complex and detailed law, and the [Commissioner] cannot arbitrarily assume that plaintiff understood its application to his particular situation.")  In addition, part of the inquiry laid out in C.F.R. § 404.510 is whether Plaintiff sent notice to the Administration of the event which caused or should have caused the deductions.  The ALJ's failure to determine whether or not Plaintiff notified the SSA of Ms. Pickman's change of address means he could not have considered all pertinent circumstances regarding whether Plaintiff accepted the payments in good faith.  Because the ALJ failed to make a factual finding regarding whether Plaintiff accepted these payments in good faith, the ALJ's decision that Plaintiff was not without fault must be remanded.

    Finally, because the ALJ found Plaintiff was at fault, it made no factual findings as to the second step of the waiver inquiry.  In order to qualify for a waiver, a plaintiff must also show that requiring repayment would either defeat the purpose of Title II of the Social Security Act, or would be against equity and good conscience.  42 U.S.C. § 404(b).  This would mean that a plaintiff "[c]hanged his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the overpayment itself."  20 C.F.R. § 404.509.  Financial need is irrelevant to this

12

component. 20 C.F.R. § 404.509; see Elliot, 654 F.2d at 1234. In deciding whether requiring repayment would be against equity and good conscience, the ALJ has to answer "the same types of questions as in the fault context: e.g., state of mind, credibility, and whether under the circumstances the claimant would have changed position anyway without overpayment." Elliot, 564 F.2d at 1234. Plaintiff claims that he spent all of the money received from the SSA to care for Ms. Pickman and that he did not monitor the deposits into her account. (Pl.'s Decl. at 2.) If Plaintiff can show that he spent the money on Ms. Pickman or otherwise changed his position in reliance on his good faith belief that the payments were correct, he may be able to show that repayment would be against equity and good conscience. Whether or not requiring Plaintiff to repay would be against equity and good conscience is a factual matter that the ALJ failed to address.

Therefore, the Court remands to the Commissioner for further proceedings not inconsistent with this order.

                              CONCLUSION

For the reasons stated above, Plaintiff's motion for remand is GRANTED and the cross-motions for summary judgment are DENIED.

IT IS SO ORDERED.


Dated:___7/23/09_____    _____
                                    CLAUDIA WILKEN
                                    UNITED STATES DISTRICT JUDGE

13